UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LACKS ENTERPRISES, INC. and
HOME PRODUCTS, LLC,

        Plaintiffs,

v.                                            Case No. 16-10867
                                            Honorable Denise Page Hood

HD SUPPLY, INC. and
HOME DEPOT U.S.A., INC.,

        Defendants.

                                                      /

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS [Dkt. No. 5]**

**I.    INTRODUCTION**

Plaintiffs Lacks Enterprises, Inc. and Lacks Home Products, LLC (collectively, "Plaintiff") have filed suit against Defendants HD Supply, Inc. and Home Depot U.S.A., Inc. (collectively, "Defendant"). This case arises out of a Settlement Agreement between Plaintiff and HD Supply, Inc. that governs the resolution of a patent infringement suit previously brought by Plaintiff against HD Supply, Inc. in this Court. *See* Case No. 12-14472. On March 24, 2016, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint (", or in the Alternative, Motion for

Judgment on the Pleadings. (Doc. No. 5). Defendant's Motion has been fully briefed.[1]

The Court, having concluded that the decision process would not be significantly aided by oral argument, previously ordered that the motion be resolved on the motion and briefs submitted by the parties. E.D. Mich. L.R. 7.1(f)(2). [Dkt. No. 15]  The Court grants in part and denies in part Defendant's Motion.

## II. BACKGROUND

Pursuant to the Settlement Agreement, Plaintiff granted HD Supply (through a subsidiary, Crown Bolt) a license to sell "Faux Garage Door Windows" (this is a defined term in the Settlement Agreement and the FAC).  In exchange, HD Supply agreed to pay Plaintiff royalties according to the terms of the Settlement Agreement. In the event of any payment dispute, the Settlement Agreement allows Plaintiff to have an independent certified public accountant audit HD Supply's records.  Article 4.5 of the Settlement Agreement provides, in relevant part:

> The Lacks Companies may hire an independent certified public accountant (hereinafter "CPA") to inspect or audit all of the HD Supply Companies' records pertaining to the manufacture, sale and return or repurchase of Faux Garage Door Windows for purposes of verifying the HD Supply Companies' compliance with the terms of this Agreement. . . . The Lacks Companies shall give the HD Supply Companies written notice of its election to inspect and audit its compliance with this Agreement no less than fourteen (14) days prior to the proposed date of

---

[1] The Court GRANTS Defendant's unopposed Motion for Leave to File Reply Brief [Dkt. No. 11].

> review of the HD Supply Companies' records by the CPA. . . . In the event of the identified deficiency, the HD Supply Companies shall have the opportunity to cure said deficiency and a single event of deficiency if timely cured shall not be deemed a material breach of this Agreement for the purpose of termination under Article VII.

The Settlement Agreement includes a provision to address Plaintiff's perceived quality control concerns about HD Supply's products, and it governs products manufactured after January 1, 2014. Article 9.2 of the Settlement Agreement states:

> The Parties agree to work together to seek a solution for the Quality Concerns for future manufacture and production runs of the Faux Garage Door Windows occurring after the Effective Date that does not add to the cost of The HD Supply Companies' Faux Garage Door Windows ("Solution"). If the Parties identify a Solution, The HD Supply Companies agree to implement such Solution.

The Settlement Agreement also contains a merger clause that provided:

> This Agreement constitutes the entire agreement and understanding among the Parties with respect to the matters contained herein, and there are no prior oral or written promises, representations, conditions, provisions, or terms related thereto other than those set forth in this Agreement.

Article 10.1 (the "Merger Clause"). After the parties executed the Settlement Agreement, Home Depot U.S.A., Inc. acquired substantially all of the assets of HD Supply's Crown Bolt subsidiary, along with the license Plaintiff granted HD Supply.

Plaintiff's original complaint in this suit alleged that Defendant: (a) failed to pay required royalties in breach of the Settlement Agreement; and (b) had defrauded Plaintiff by providing false sales reports to underpay the royalties due on HD Supply

3

products. Defendant filed an answer to the original complaint. On February 12, 2016, Plaintiff filed a First Amended Complaint ("FAC"), and it includes six counts: (1) Count I - Breach of Settlement Agreement; (2) Count II - Fraudulent Misrepresentation; (3) Count III - Declaratory Relief; (4) Count IV - Patent Infringement; (5) Count V - Unfair Competition in Violation of the Lanham Act, 15 U.S.C. § 1125(a); and (6) Count VI - Unfair Competition in Violation of Michigan Common Law.  On March 10, 2016, this case was transferred to the Eastern District of Michigan from the Western District of Michigan.

### III. APPLICABLE LAW & ANALYSIS

#### A. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint.  Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556.  Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Analysis

#### 1. Fraud Claim

Defendant asserts that Plaintiff's fraud claims should be dismissed: (a) for failure to plead with particularity, as required under Federal Rule of Civil Procedure 9(b); and (b) pursuant to the Merger Clause.[2] Defendant first contends that Plaintiff fails to satisfy the pleading standards of Rule 9(b) because Plaintiff did not allege the time, place and contents of the misrepresentation(s) upon which it relies - or who made the misrepresentations. *See, e.g., Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 253 (6th Cir. 2012) (holding that to comply with Rule 9(b), "the plaintiff must: (1) point to a particular allegedly fraudulent statement; (2) identify who made the statement; (3) plead when and where the statement was made; and (4) explain what made the statement fraudulent").

Defendant's argument is based on four paragraphs of the FAC it identifies. *See*

---

[2]Defendant also argues Plaintiff's fraud claim is inconsistent with its breach of contract claim but this a motion on the pleadings. Plaintiff is entitled to plead in the alternative.

Doc. No. 5, PgID 176 at n. 11 and 12. Defendant argues that Plaintiff's allegations do not identify any particular fraudulent statement(s) and there is not identification of the individual(s) (or even entity(ies) who made the alleged representations. Citing *Anderson v. Pine S. Capital, LLC*, 177 F.Supp.2d 591, 596-97 (W.D. Ky. 2001) ("When the complaint involves multiple defendants, then 'each defendant's role must be particularized with respect to their alleged involvement in the fraud.'").

Plaintiff response identifies 17 paragraphs that Plaintiff asserts contain particularized allegations regarding Defendant's fraudulent conduct. *See* Doc. No. 7, PgID 206-08. Plaintiff alleges that the statements were made at a meeting in Grand Rapids during December 2012, which satisfies element (3). The allegations identify that statements were made by representatives of HD Supply and Crown Bolt, which Plaintiff contends satisfies element (2), but those allegations do not identify an individual(s) who made the statements. Plaintiff argues that element (1) (the allegedly fraudulent statement) is satisfied because HD Supply and Crown Bolt representatives "represented that they intended to address quality concerns as to their products in good faith." *See* FAC at ¶¶ 132-33. *See also* FAC at ¶¶ 34, 48.

Defendant contends that Plaintiff's allegations that Defendant "made certain representations" about the market/projected sales and "agreed to take certain steps" to ensure product quality, FAC at ¶¶ 33, 34, are not specific enough because Plaintiff

6

does not identify what those "certain" things were. Plaintiff alleges that element (4) is satisfied because "Defendants never intended to be bound by the quality control provisions." *See* FAC at ¶¶ 80, 135.

Defendant also asserts that the Merger Clause precludes any fraud claim and that Plaintiff's reliance on extra-contractual representations is unreasonable as a matter of law. Defendant relies on *UAW-GM Human Resource Center v. KSL Recreation Corp.*, 579 N.W.2d 411, 419 (Mich.Ct.App. 1998), where the Court stated:

> [W]hen a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, *i.e.*, fraud related to the merger clause or fraud that invalidates the entire contract including the merger clause" and "the merger clause made it unreasonable for plaintiff's agent to rely on any representation not included in the letter of agreement.

*Id.*

Plaintiff argues that its fraud claim is not barred by the merger clause because Plaintiff has pled fraud in the inducement. Citing *JAC Holding Enterprises, Inc. v. Atrium Capital Partners, LLC*, 997 F.Supp.2d 710, 730 (E.D. Mich. 2014) (citations omitted) ("The presence of a merger clause in a written contract will not preclude a claim for fraud in the inducement where the plaintiff can show that it would have avoided the agreement entirely under the terms ostensibly agreed to, in the absence of the defendant's fraudulent representations"); *Ramirez v. IBM Corp.*, 829 F.Supp.2d 555, 561 (E.D. Mich. 2011). The Court finds that Plaintiff has pled that Defendant

induced Plaintiff to enter the Settlement Agreement by making misrepresentations to Plaintiff. *See* Doc. No. 7, at PgID 211 (citing FAC at ¶ 143) ("[t]he very crux of [its] fraud claim is that 'but for Defendants' representations that it would address quality concerns as to their products, [Plaintiff] would not have entered into the Settlement Agreement . . .'"). *See also* Doc. No. 2, PgID 138 ("WHEREFORE" ¶).

Defendant responds that the Settlement Agreement itself contains no allegations that Defendant made any representations about inventory levels, the need for additional product after the effective date of the Settlement Agreement, or that Defendant would purchase any products from Plaintiff. Defendant asserts that there can be no fraud in the inducement because the parties negotiated the terms of the Settlement Agreement. Defendant argues that Plaintiff's fraud claim must be dismissed because, despite that negotiation, the Settlement Agreement provides only that "the Parties agree to work together to seek a solution for the Quality Concerns" and the Settlement Agreement does not include specific representations about quality control that Defendant had to satisfy.

Defendant's argument regarding the Merger Clause is rejected because Plaintiff has pled fraud in the inducement—that Plaintiff would not have entered into the Settlement Agreement but for Defendant's misrepresentations. *See JAC Holding Enterprises; Ramirez, supra*. However, Plaintiff does not plead with any particularity

what the misrepresentations were. Plaintiff only generally alleges that Defendant misrepresented its intentions concerning quality control when alleging that Defendant had stockpiled inventory and never intended to comply with the quality control provisions. *See* FAC, at ¶¶ 45-46, 48, 76-77, 79-82, 132-33, 135-36, 139. Plaintiff also fails to identify the persons who made the misrepresentations, as Plaintiff only alleges it was HD Supply, Inc. and Crown Bolt. *See* FAC, at ¶¶ 32-35. Defendant's motion is granted as it relates to Plaintiff's fraud claim, which is dismissed for failure to satisfy the pleading requirements of Rule 9(b).

    2.    *Breach of Contract Claim - Quality Control Provision*

Defendant contends that Section 9.2 of the Settlement Agreement (the quality control provision) is unenforceable because it requires only that Defendant <u>negotiate</u> with Plaintiff. Defendant contends that Section 9.2's obligation "to work together to seek a solution . . . for future manufacture and production runs . . ." is simply an agreement to negotiate, which is not enforceable. *See, e.g., Trapp v. Vollmer*, 2011 WL 2423884, at \*\*1-2 (Mich.Ct.App. June 16, 2011) ("to be valid, a contract to contract must contain all the essential elements that are to be incorporated into the final contract. . . . agreements to negotiate have been held unenforceable for lack of material terms."); *Ford Motor Co. v. Kahne*, 379 F.Supp.2d 857, 869 (E.D. Mich. 2005) ("As long as the contract to enter into a future contract specifies the material

9

and essential terms, leaving none to be agreed as a result of future negotiations, it[] is legally enforceable."). Defendant asserts that Defendant is not bound to take any specific steps, just that it must "work together" with Plaintiff to "seek a solution" regarding "future quality problems," which means only an obligation to negotiate. *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006).

Plaintiff does not directly respond to Defendant's argument. Plaintiff instead suggests that Defendant is arguing that the unenforceability of the quality control provision renders the entire Settlement Agreement void for lack of essential terms. Plaintiff states that the quality control provision is an essential provision of the Settlement Agreement. Plaintiff argues that it would not have entered the Settlement Agreement without the provision and that if the provision is merely an "agreement to agree," the Settlement Agreement is unenforceable and void. *Robinson v. A.Z. Shmina and Sons Co.*, 96 Mich.App. 644, 649 (1980) (emphasis added) ("A general rule of contract law is that a void section of an otherwise valid contract provision can be severed *if it is not an essential part of the whole*"). In this case, Plaintiff asserts, the quality control provision is essential to the Settlement Agreement and, as it is unenforceable, the entire Settlement Agreement should be voided.

Defendant counters that it did not argue that the unenforceability of Section 9.2 rendered the entire Settlement Agreement void. Defendant responds that Section 9.2

10

has no bearing on the rest of the Settlement Agreement and can be severed pursuant to Section 10.5 of the Settlement Agreement, which provides:

> If any provision or portion of a provision of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable under any applicable statute or rule of law, . . . the remaining provisions or portions of provisions of this Agreement shall in no way be affected or impaired thereby.

Defendant states that Plaintiff has offered no support for contending that the quality control provision was an essential term, as: (1) no indication that the quality control provision is essential was written into the Settlement Agreement; and (2) the quality control provision applies only to products manufactured in the future.

Defendant also contends Plaintiff has not alleged a viable breach of Section 9.2 because Plaintiff has not specifically alleged that Defendant manufactured any product after January 1, 2014, the effective date of the Settlement Agreement. Defendant further contends that by simply alleging that "upon information and belief" Defendant has manufactured and produced several different models of the Faux Garage Door Windows since the effective date, Plaintiff does not satisfy the *Iqbal* standard.

Plaintiff argues that it sufficiently pled a breach of contract as it relates to the quality control provision. Plaintiff contends that "parties may plead on the basis of information and belief 'where the facts are peculiarly in the possession and control of the defendant or where the belief is based on factual information that makes the

inference of culpability plausible.'"*Wood v. Dow Chemical Co.*, 72 F.Supp.3d 777, 783 (E.D. Mich. 2014) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Plaintiff asserts that: (a) it attempted to gain such information from Defendant but Defendant was uncooperative, and (b) it "understands" that subsequent productions have occurred but can only actually determine that through discovery.

Defendant also asserts that, because Plaintiff does not allege that Plaintiff proposed a solution that did not add to Defendant's costs, Defendant could not have violated Section 9.2. Plaintiff responds that the necessary information regarding the impact of costs on Defendant is also within Defendant's possession and control, to which Plaintiff is not privy. Plaintiff contends that Defendant has withheld and failed to provide information but then alleged that Plaintiff has not complied.

Defendant's motion to dismiss is granted insofar as it argues that Section 9.2 is unenforceable because Defendant is not obligated to do anything other than negotiate. The basis for that conclusion is that while Plaintiff and HD Supply, Inc. "agree[d] to work together to seek a solution," Section 9.2 does not require them to reach a solution. Rather, as Section 9.2 expressly provides, Defendant is obligated to do more than negotiate only <u>if</u> the parties agree on a solution: "If the Parties identify a Solution, The HD Supply Companies agree to implement such Solution." The Court also finds that Section 9.2 can be severed from the Settlement Agreement, as there is

no indication in the Settlement Agreement that it was based on that provision.

### 3. *Breach of Contract Claim - Breach of Royalty Provision*

Defendant asserts that Plaintiff's breach of contract claim regarding underpayment of royalties is deficient because: (a) Plaintiff alleges only that "upon information and belief" Defendant has not paid appropriate royalty payments since December 2014; and (b) Plaintiff has not alleged that it has initiated audit procedures pursuant to Section 4.5 of the Settlement Agreement. Defendant argues that condition must be satisfied prior to alleging a breach because Defendant has the right to cure a default before it can be found to have materially breached the Settlement Agreement. Plaintiff again asserts that it had to plead "upon information and belief" because the information is within the possession of Defendant. Plaintiff alleges that it utilized a market analysis and used software program functions to verify that the volume of Defendant's Faux Garage Door Windows was much greater than Defendant was reporting to Plaintiff. FAC at ¶¶ 95-99. Defendant contends that Plaintiff's allegations regarding the software program are meaningless because they do not measure the appropriate sales.

Plaintiff also argues that Article 4.5 of the Settlement Agreement does not require Plaintiff to utilize an independent audit before bringing a lawsuit, as it is permissive: "[Plaintiff] *may* hire an independent certified public accountant . .

.[Plaintiff] shall give [Defendant] written notice of its ***election*** to inspect and audit [Defendant's] compliance . . ." *Id.* (emphasis added). Plaintiff suggests that Section 7.2 and Section 7.5 also provide a mechanism by which to challenge the underpayment of royalties and allow for termination of the Settlement Agreement upon such material breach. Section 7.2 provides, in relevant part:

> If any royalty, deficiency or other amounts due under this Agreement are not paid by the Licensee to Licensor . . . within fifteen (15) days of the date when due and at least seven (7) calendar days have passed after notice to Licensee of lack of payment . . . and such failure continues for a period of thirty (30) days after given written notice of such failure, then such Party shall be in default whereupon the other Party may at its option terminate the Agreement and License Agreement under Article IV by written notice to the defaulting Party.

Section 7.5 provides the mechanism by which the parties must attempt to negotiate a resolution of dispute ("The Parties will attempt in good faith to resolve . . . (emphasis added)). Plaintiff argues that: (a) it has sufficiently alleged that Defendant failed to make royalty payments as required under the Settlement Agreement; (b) it has complied with its obligations pursuant to Sections 7.2 and 7.5; and (c) Defendant has not cured the deficiency.

Defendant replies that Plaintiff's acknowledgment that the Settlement Agreement "allowed" it to inspect and audit Defendant's records demonstrates that Plaintiff evaded that mechanism by which Plaintiff could have obtained direct evidence. Defendant contends that Section 4.5 and Sections 7.2 and 7.5 reference

14

each other and no breach of royalty payments can be claimed absent the pursuit of an independent audit – as evidenced by Section 7.5 requiring negotiation of "audit results."

Defendant's motion to dismiss is denied as it relates to the breach of royalty payment provision. As Plaintiff argues, Defendant alone has the information regarding whether any products have been produced after the effective date of January 1, 2014. For that reason, Plaintiff is entitled to plead "upon information and belief" with respect to this claim. Plaintiff also is correct with regard to the permissive nature of Section 4.5. Nothing in Section 4.5 requires Plaintiff to conduct an audit to ascertain underpayments, nor does Article IV contain the only basis for asserting an underpayment of royalties. Finally, Plaintiff has pled that it complied with its dispute resolution obligations pursuant to Section 7.5. FAC, at ¶ 127.

   *4. Patent Infringement and Unfair Competition Claims*

Defendant argues that Plaintiff's patent infringement and unfair competition claims must be dismissed because they are contingent on a material breach of the Settlement Agreement that would authorize Plaintiff to terminate the Settlement Agreement and the license. Defendant states that, as there was no breach that would support the termination of the Settlement Agreement under Article VII, the patent infringement and unfair competition claims should be dismissed.

Plaintiff responds that its breach of contract claims regarding both the quality control provisions and the underpayment of royalties are viable. Plaintiff maintains that, even if those claims are deficient, its patent infringement claim and unfair competition claims are viable because the Settlement Agreement would be unenforceable. If the Settlement Agreement is unenforceable, Defendant would have no authorization to continue to use Plaintiff's Patent and would damage Plaintiff's reputation by selling an inferior product. Plaintiff's argument assumes that the unenforceable provisions would void the entire Settlement Agreement.

As Plaintiff's breach of contract claim regarding the underpayment of royalties survives, Defendant's basis for dismissing the patent infringement and unfair competition claims lacks merit because there is a remaining claim. Defendant's motion is denied as it relates to Plaintiff's patent infringement and unfair competition claims.

### 5. *Declaratory Judgment Claim*

Defendant argues that the declaratory judgment claim should be dismissed because Plaintiff has not alleged any uncertainty or insecurity as to its rights, which is required. *Panhandle Eastern Pipe Line Co. v. MichCon Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949) (declaratory judgment available only "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2)

when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."). Defendant suggests that the claims in Plaintiff's complaint are clear and there is no ambiguity to resolve. Defendant argues that the Settlement Agreement should remain intact, except for the severed unenforceable quality control provision, and Plaintiff's claims should be dismissed.

Plaintiff counters that the parties' differing views regarding the language of the Settlement Agreement demonstrate that there is a need for the Court to declare the legal rights and obligations of the parties. Plaintiff acknowledges that, if the Court rules the Settlement Agreement unenforceable for lack of essential terms, its claim for declaratory judgment is moot.

Defendant's motion to dismiss is denied as it pertains to Plaintiff's declaratory judgment claim. Plaintiff's breach of contract claim for underpayment of royalties does not, as Defendant implies, fully award Plaintiff the relief it seeks; rather, a finding for Plaintiff on that claim will simply award Plaintiff damages for any underpayment of royalties. Plaintiff also is asking the Court to terminate the Settlement Agreement based on that breach. Accordingly, Plaintiff's declaratory judgment claim survives Defendant's motion to dismiss.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED that** Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, or in the Alternative, Motion for Judgment on the Pleadings [Dkt. No. 5] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that:

    A.    Count I remains before this Court, except that Plaintiff's claim in of Count I related to Section 9.2 of the Settlement Agreement is DISMISSED;

    B.    Count II is DISMISSED; and

    C.    Counts III, IV, V, and VI remain before this Court.

IT IS SO ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: October 18, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 18, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager